Charles ARCENEAUX, Sr., Individually and as the Legal Tutor of his Minor children, Tabby Lois Arceneaux, et al., Plaintiffs-Appellants, Cross-Appellees,

v.

TEXACO, INC., and General Motors Corporation, et al., Defendants-Appellees, Cross-Appellants.

No. 77–3476.

United States Court of Appeals, Fifth Circuit.

July 25, 1980.

Rehearing Denied Sept. 12, 1980.

Daniel Lund, Harold B. Carter, Jr., James B. Irwin, New Orleans, La., for Charles Arceneaux, Sr., et al.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, John G. Gomila, New Orleans, La., for Texaco, Inc.

Bernard, Micholet & Cassisa, Peter L. Bernard, Jr., Jerry L. Saporito, Joseph S. Palermo, Jr., Metairie, La., for General Motors.

Daniel A. Webb, Lawrence E. Abbott, New Orleans, La., for Edward Anderman.

Before BROWN, AINSWORTH and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

This diversity case requires the application of federal evidentiary rules and Louisiana substantive law. Appealing a jury verdict in favor of the defendants, the plaintiff raises a number of issues. The two basic contentions are that the trial judge improperly excluded various items of evidence and that he misread Louisiana substantive law. We conclude that the barred evidence was not admissible and that the evidence, construed most favorably to the plaintiffs, would not have been sufficient to support a jury verdict even had the trial judge construed Louisiana principles of vicarious liability in the broadest fashion supportable by Louisiana jurisprudence. Therefore, we affirm.

Charles Arceneaux drove his pickup truck with his three children and his wife as passengers into a Texaco service station and asked the attendant to fill the tank. There was evidence that, while the attendant was doing this, he lit a cigarette and ignited the gasoline. He jerked the nozzle out of the gas tank and sprayed flames into the cab of the truck. All of the Arceneaux family were seriously injured and Mrs. Arceneaux died as a result of her burns. The gas tank was on the driver's side of the Arceneaux vehicle, an eight-year-old General Motors [GM] truck. The passenger door had previously been damaged and was lashed shut with rope.

Mr. Arceneaux sued Texaco for the attendant's negligence and GM for faulty design of the truck. Texaco's principal defense was that the service station was independently operated and it was, therefore, not liable for the fault of the attendant. GM in turn cross-claimed against Texaco and filed a third-party complaint against the operator of the service station. The operator cross-claimed against GM. After a lengthy trial, the jury found that the station attendant had been negligent, that Mr. Arceneaux had been contributorily negligent, but that the attendant had had the last clear chance to avoid the accident. It

found that Texaco was not liable for the operator's actions and, therefore, returned a verdict in favor of Texaco. It also returned a verdict in favor of GM. Mr. Arceneaux appeals these verdicts, arguing that the trial judge committed numerous errors. The operator and Texaco appeal the finding that the attendant had the last clear chance to avoid the accident.

*Claims against Texaco*

The Arceneaux complaint against Texaco relied upon various theories, including the agency doctrine of apparent authority and one referred to as warranty through advertising. The district judge, in rulings prior to trial, restricted the evidence to that probative of a traditional master-servant relationship between Texaco and the operator. He thus excluded evidence proffered to support the other theories.

■ The trial judge analyzed the Louisiana cases and found that no Louisiana court had imputed tort liability from an agent to a principal on the basis of apparent rather than actual authority.[1] While neither his opinion nor counsel's brief refers to any case in which a Louisiana court has rejected this application, he concluded that, because Louisiana had not affirmatively adopted the doctrine of apparent authority as a basis for tort liability, a federal court could not do so. Under the *Erie* doctrine,[2] however, if the state courts have not yet decided a particular question, the duty of a federal court is to decide what the state courts would hold if faced with it. *See First National Life Insurance Company v. Fidelity & Deposit Company of Maryland*, 525 F.2d 966 (5th Cir. 1976); *Mississippi Power Company v. Roubicek*, 462 F.2d 412 (5th Cir. 1972). The issue is not resolved merely by a determination that it has not yet arisen.

■ Under Louisiana law, as in common law jurisdictions, a principal may be held liable for an agent's negligence if there is a master-servant relationship. *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968). The indicia of such a relationship are the right of the principal to control the agent's time and physical activities and the existence of a close relationship between the parties. *Id.* at 44, 215 So.2d at 905. As Justice Barham's opinion in *Blanchard* points out, Louisiana courts have adopted common law principles in determining when vicarious liability is imposed. *Id.* at 42–43, 215 So.2d at 904–05.

The doctrine of apparent authority is of common law origin and is defined as "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958). In determining whether the acts of an agent bind his principal in a contractual situation, the Louisiana Supreme Court has imposed liability based on apparent authority. *See United States Fidelity & Guaranty Company v. Dixie Parking Service, Inc.*, 262 La. 45, 262 So.2d 365 (1972); Note, Apparent Authority in a Civil Law Jurisdiction, 33 La.L.Rev. 735 (1973). However, Louisiana courts have not decided whether the doctrine may be used to impute tort liability to a principal.

Louisiana courts have drawn freely from the common law and the Restatements of the Law in developing both tort and agency doctrine.[3] We may assume for present purposes, without deciding, that they would proceed along the Restatement path and adopt the rule of apparent authority in tort cases. The Restatement (Second) of Agency § 265 (1958) states the general rule:

---

1. In his ruling, the judge did discuss two cases cited by the plaintiff that mentioned apparent authority in a tort context. We agree with the judge that the cases actually rested on findings of control over the agent by the principal, the traditional master-servant test. *See Shankland v. Morris & Castle Shows, Inc.*, 4 La.App. 326 (1926); *E. C. Taylor Co. v. New York & Cuban Mail S. S. Co.*, 159 La. 381, 105 So. 379 (1925).

2. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. *See, e. g., LeJeune v. Allstate Insurance Co.*, 365 So.2d 471 (La.1978); *Johnson v. Insurance Company of North America*, 360 So.2d 818 (La.1978); *LeBrane v. Lewis*, 292 So.2d 216 (La.1974); *Blanchard v. Ogima*, 253 La. 34, 215 So.2d 902 (1968).

(1) A master or other principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority.

(2) Unless there has been reliance, the principal is not liable in tort for conduct of a servant or other agent merely because it is within his apparent authority or apparent scope of employment.

■ This section and section 267, the commentary and the illustrations, set forth in full in the footnote,[4] impose vicarious liability for a tort only if the injured person has himself relied on representations to his detriment. Neither the actual testimony nor any proffer by Mr. Arceneaux indicates such reliance or even facts from which reliance might be inferred. The evidence proffered in support of this theory and not admitted consisted of television and radio advertising that, according to an expert witness, would have tended to show that Texaco misled the public into believing that it was responsible for service at Texaco stations. However, none of this mentioned what Mr. Arceneaux would have testified about *his* reliance. Neither his trial testimony nor his deposition contains testimony that might support the inference that he entered the service station because he believed that Texaco was its operator. In fact, Mr. Arceneaux stated in his deposition that the reason he chose this service station

was pure convenience: he needed gas and the Texaco station was more accessible than other stations. Because we find no evidence of any reliance by Mr. Arceneaux and neither the exhibits nor the expert testimony would have justified the inference that he had relied upon Texaco's alleged representations, they were properly excluded.

■ Mr. Arceneaux also argues that this and other evidence should have been admitted under a general theory of warranty through advertising. We do not reach the issue whether Louisiana has adopted such a theory related to services, as opposed to products, for the same reason that we reject the apparent authority argument: the record does not indicate that Mr. Arceneaux was induced to patronize the Texaco service station through advertising.

The Arceneaux theory may be that Texaco is bound by its advertising whether or not Mr. Arceneaux relied in any way on it. Our study of Louisiana cases satisfies us that, while Louisiana courts might adopt the Restatement position on apparent authority, they would not go beyond it and develop a new predicate for tort liability.

■ Finally, Mr. Arceneaux contends that the trial judge erroneously excluded evidence that tended to show that Texaco actually did control or monitor Texaco service stations. Having examined the evi-

---

4. **§ 267. Reliance upon Care or Skill of Apparent Servant or Other Agent.**
 One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.
 **Comment:**
 *a.* The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an invitation from the defendant to enter into such relations with such servant. A manifes-

tation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority.
 **Illustrations:**
 1. P, a taxicab company, purporting to be the master of the drivers of the cabs, in fact enters into an arrangement with the drivers by which the drivers operate independently. A driver negligently injures T, a passenger, and also B, a person upon the street. P is not liable to B. If it is found that T relied upon P as one furnishing safe drivers, P is subject to liability to T in an action of tort.
 2. P invites T to his house, sending to him A, who is dressed in P's livery and hence appears to be P's personal chauffeur. In fact, A is a driver operating independently. The driver is guilty of wanton conduct in driving and thereby injures T. P may be liable to T.

dence actually proffered, we conclude that this evidence was not logically probative of the existence of a master-servant relationship between Texaco and the operator and it was, therefore, properly excluded.

*Claims against GM*

The claim against GM is based on a theory of defective or negligent design of the truck. Mr. Arceneaux contended that the gas tank was located dangerously close to the passenger compartment of the truck. To bolster this theory, he sought to introduce evidence of a change in location of the gas tank made after 1966, the model-year of the Arceneaux truck. The trial judge excluded the evidence under Federal Rule of Evidence 407, Subsequent Remedial Measures. That rule states in part: "When, *after an event,* measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." (Emphasis supplied).

 The trial judge did, indeed, fail correctly to apply Rule 407. The accident took place in 1974, but the changes were made beginning in 1971. Thus, they were not implemented in response to the "event." However, the evidence was properly excluded because it was irrelevant under Federal Rules of Evidence 401 and 402. The evidence shows that the design changes were made solely in response to new federal environmental requirements. Furthermore, the appropriate test is whether a product was designed with reasonable care for safety in the use for which it was manufactured, measured by the knowledge available both at the time of design and manufacture. *See Ward v. Hobart Manufacturing Company,* 450 F.2d 1176 (5th Cir. 1971); *Dean v. General Motors Corporation,* 301 F.Supp. 187 (E.D.La.1969). *Cf. Rozier v. Ford Motor Company,* 573 F.2d 1332 (5th Cir. 1978) (document concerning changes in fuel tank design made necessary by revised federal safety standards admissible to show duty to warn of latent danger). The evidence supports the jury's finding that the design of the 1966 truck, which must have been formulated long prior to the time it was manufactured, was not faulty based on knowledge available in 1966.

*Other Issues*

We have considered the numerous other contentions and find them to be either without merit or moot in light of the issues discussed above.[5]

For the above reasons, we AFFIRM the jury verdict.

---

**5.** The operator of the station and Texaco argue that the jury erred in finding that the station attendant had the last clear chance to avoid the accident. The jury was given instructions on the doctrines of negligence, contributory negligence and last clear chance. However, an examination of the evidence leads us to conclude that it did not warrant submission to the jury of the questions concerning contributory negligence and last clear chance.

The defendants argued that Mr. Arceneaux had been contributorily negligent in tying the passenger door of the truck shut, thus impeding escape from the fire. However, under Louisiana law "[c]ontributory negligence is negligence which contributes *to the accident,* that is, having causal connection with it and but for which the accident would not have occurred." (Emphasis supplied.) *Frisard v. Oalmann,* 175 So.2d 407, 409 (La.Ct.App.1965). Under any view of the evidence, the fact that the door was tied shut in no way contributed to causing the fire; at most, the blocked exit prevented the Arceneaux family from minimizing the injuries from the fire, a consideration that goes to the question of assessment of damages. The doctrine of last clear chance is, therefore, not applicable. However, because the effect of the verdict would be the same, with the fault still resting on the operator, and because he is not a defendant in the Arceneaux suit, a remand is unwarranted.