**Elisabetta and Pietro AGO, Plaintiffs,**

v.

**BEGG, INC., et al., Defendants.**

**Civ. A. No. 85–2229.**

United States District Court,
District of Columbia.

Dec. 15, 1988.

614

Charles C. Parsons, Reback & Parsons, Chartered, Washington, D.C., for plaintiffs.

Joyce M. Notarius, Mark M. Levine & Assoc., Carol T. Stone, Jordan Coyne Savits & Lopata, Washington, D.C., Joseph P. Dyer, Jr., Siciliano, Ellis, Dyer & Boccarosse, Fairfax, Va., for defendants.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

After the Court entered judgment pursuant to a jury verdict on October 26, 1988, the parties each filed post-trial motions. The Court grants defendants' motion to amend judgment to remit the amount of

damages, grants defendant Betty Jacobsen's motion for a judgment notwithstanding the verdict on the fraud count, denies defendant Mount Vernon Realty's motion to set aside judgment, and denies plaintiffs' motion for a partial new trial or for a judgment notwithstanding the verdict.

This case arose after plaintiffs entered into a contract with Mr. Edgar Weisman for the sale of their house on Klingle Street in Washington, D.C. Defendant Betty Jacobsen, a realtor, was the selling agent in this transaction. She was employed by Noah–Cummings, Inc., which had a licensing agreement with Mount Vernon Realty, Inc., which in turn allowed Noah–Cumming's agents to use Mount Vernon's tradename. Defendants Begg, Inc., Suzanne Madden, and Catherine Wojciak were the listing agents. Defendant Ms. Jacobsen presented Begg with a sales contract from Mr. Edgar Weisman. Begg contacted Mr. and Mrs. Ago.

The final contract price was $265,000, of which Mr. Weisman paid $70,000 in cash as a down payment. Mr. Weisman placed a first trust on the property, which was to be used to pay for and improve the property. Plaintiff Elisabetta Ago took back a second trust of $195,000, the amount of the purchase price minus the down payment. Mr. Weisman, who agreed to pay 12 percent on the second trust, failed to make any payments on the second trust. Had Mr. Weisman made these payments, plaintiffs argued, plaintiffs would have received $341,811 up to the day of deliberation.

Weisman also defaulted on the first trust and the property was foreclosed. With a total indebtedness in excess of the purchase price, there was no money to pay the second trust at foreclosure, and the plaintiffs lost their equity and entire interest in the property.

Plaintiffs sued Begg, Inc., Suzanne Madden, Catherine Wojciak, Betty Jacobsen, and Mount Vernon Realty for negligent breach of fiduciary duty and fraud. The Court directed a verdict on the fraud count in favor of defendants Begg, Inc., Suzanne Madden, and Catherine Wojciak. The jury found all defendants liable on all counts, except that Mount Vernon Realty was found not liable for fraud. The jury awarded plaintiffs $400,000.

*Defendants' Motion to Amend Judgment to Remit the Amount of Damages*

■ All defendants moved to amend the judgment to remit the amount of damages to $195,000, the amount of the contract price minus the down payment received by plaintiffs. The Court has authority Under Federal Rule of Civil Procedure 59 to amend the judgment if the jury verdict is unsupported by the evidence or by the law.

The Court believes that it is clear as a matter of fact and law that plaintiffs are entitled only to $195,000 in damages, the amount of "out-of-pocket" loss suffered by them. In the District of Columbia, the usual standard for measuring damages in real estate fraud or negligence cases is the "out-of-pocket" rule or, more precisely, the difference between the market value of the property sold and the amount actually received. *See Dresser v. Sunderland Apartments Tenants Association, Inc.*, 465 A.2d 835, 840 (D.C.1983); *Horning v. Ferguson*, 52 A.2d 116, 119 (D.C.Mun.App.1947). In the instant case, plaintiffs are entitled as a matter of law to only $195,000, the difference between the contract price, $265,000, and the amount they received, $70,000. Plaintiffs are not entitled to $341,811, which in essence would give plaintiffs the full "benefit of their bargain" with Mr. Weisman. A number of courts outside the District wisely have refused the "benefit of the bargain" calculation in cases in which, as here, third-parties to the transaction are being sued. *See, e.g., Horning; Scholz Homes Inc. v. Wallace*, 590 F.2d 860, 864 (10th Cir.1979); *Nailor v. Western Mortgage Co.*, 54 Wash.2d 151, 338 P.2d 737, 739 (1959).

Plaintiffs note that strict application of the "out-of-pocket" rule is not always mechanically applied in the District, citing *Spargnapani v. Wright*, 110 A.2d 82, 85 (D.C.Mun.App.1954), in which the buyer sued over a defective boiler in his recently purchased home. Instead of trying to determine damages by taking the value of the home under the contract and subtracting

from it an estimate of the market value of the home delivered, the court chose as the measure of damages the replacement value of the boiler—which presumably would have been nearly the same amount that would have been reached by the other calculation. Rather than standing for the proposition that District of Columbia accepts the "benefit of the bargain" rule, however, the Court believes that this opinion stands merely for the proposition that a "direct and simple" measure of damages may be preferable to a vague and unascertainable measure, especially when the two determinations presumably would result in the calculation of similar awards.

In any event, plaintiffs also note that *Dresser* stated that the "out-of-pocket" rule may be departed from where necessary to effect justice. 465 A.2d at 840 n. 18. Assuming this statement to be true, the Court believes that departure from the "out-of-pocket" rule clearly is *not* justified in this case. The thrust of plaintiffs' case is that defendants were negligent or fraudulent in leading plaintiffs to Mr. Weisman in the first place. Had they not breached their responsibilities, plaintiffs argue, they would never have encouraged plaintiffs to enter into the contract with Mr. Weisman. If this had been the case, plaintiffs would have saved their "out-of-pocket" losses and would never have had the opportunity to hope for the "benefit of their bargain."

Accordingly, the Court concludes without doubt that the jury's award of $400,000 was unreasonable and unjustified by the evidence or the law, and that plaintiffs are entitled as a matter of law under the jury's verdict to only their "out-of-pocket" losses of $195,000.[1]

Finally, plaintiffs argue in their opposition to defendants' post-trial motions that the Court should accept the jury's award of $400,000—a total more than $58,000 in excess of the amount requested by plaintiffs—because this excess represents the justifiable award of "attorneys' fees." Defendants are correct, however, in noting that attorney's fees were never a part of this suit and were never mentioned at trial. There is no reason, and can be no reason, to characterize a portion of the jury's award as justifiable attorney's fees. Moreover, if plaintiffs are asking to the Court to award attorney's fees, the Court believes that the award of attorney's fees is not justified in this case. *See F.W. Berens Sales Co. v. McKinney,* 310 A.2d 601, 602–603 (D.C.1973) (setting forth the high requirements for the Court to be permitted to award attorney's fees).

In sum, the Court finds that the damages awarded by the jury of $400,000 must as a matter of both law and fact be remited to a damage award of $195,000.

*Defendant Betty Jacobsen's Motion for a Judgment Notwithstanding the Verdict*

Defendant Betty Jacobsen moves, pursuant to Federal Rule of Civil Procedure 50(b), for a judgment notwithstanding the verdict on the fraud count against her.[2] The Court grants her motion, agreeing with her that the evidence did not meet the high requirements for proving fraud under the law of the District of Columbia.

■ The standard for judging a motion for judgment notwithstanding the verdict is the same as that for a directed verdict—whether a reasonable person could have reached such a verdict upon the evidence presented. *See, e.g., Crown Central Petroleum Corp. v. Brice,* 427 F.Supp. 638, 640 (E.D.Va.1977). Moreover, a count of fraud must be proven by "clear and convincing" evidence, not merely a preponderence of the evidence. *Raynor v. Richardon–Merrell, Inc.,* 643 F.Supp. 238, 243

---

1. Interest is not awarded because pre-judgment interest in generally not available in suits under District of Columbia law. D.C.Code Ann. § 15–109.

2. Both defendant Betty Jacobsen and plaintiffs note the inconsistency between the jury's finding of liability on both the negligence and the fraud count for Ms. Jacobsen and the jury's finding of liability only on the negligence count for Mount Vernon Realty. Considering that plaintiffs' theory of holding Mount Vernon Realty liable was that Betty Jacobsen was Mount Vernon Realty's agent, Mount Vernon Realty must be liable for the fraud of its agent acting within the scope of her agency. *Restatement (Second) of Agency* §§ 257, 261.

(D.D.C.1986); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977). Finally, to recover for fraud a plaintiff must prove 1) a false representation, 2) made with knowledge by defendant of its falsity, 3) with the intent to deceive, and 4) resulting in an injury suffered by plaintiffs based on their reasonable reliance on the misrepresentation. *See Urban Investments, Inc. v. Branham*, 464 A.2d 93, 98 (D.C.1983); *Bennett*, 377 A.2d at 59.

■ Plaintiffs argued that Ms. Jacobsen defrauded plaintiffs by knowingly failing to tell them that that Weisman had no intention of completing the promised improvements to their homes, by giving plaintiffs a net worth statement of Mr. Weisman that she knew to be false, and presenting them with a subordination agreement that largely concealed the dangers of the first trust arrangement. The evidence showed that Ms. Jacobsen never actually spoke to plaintiffs, but made representations to defendants Begg, Inc., and its agents, who in turn spoke to plaintiffs.

With regard to Ms. Jacobsen's knowledge of Mr. Weisman's intentions, plaintiffs had the burden of proving that when Ms. Jacobsen made her statements she knew that Mr. Weisman did not intend to make the promised improvements on the home. *See Bennett*, 377 A.2d at 61 (fraud based on a promise exists only when the party knows that the events promised will not occur). The evidence showed that Mr. Weisman had delayed in making scheduled improvements on some of the previous properties purchased by him with the help of Ms. Jacobsen, but that renovation work had been completed on other of the properties. Moreover, the absence of work on other properties that was scheduled to begin after Ms. Jacobsen's allegedly fraudulent statements in this case cannot prove that Ms. Jacobsen *knew* at the time she made the statements in the instant case that the Mr. Weisman had no intention of making the promised renovations. In sum, the Court finds that a reasonable person could not find that there was clear and convincing evidence that Ms. Jacobsen's

statements with regard to Mr. Weisman's intentions were fraudulent.

Additionally, there was evidence that Mr. Weisman *was* paying off his debt on the second trust on at least one of the other properties when Ms. Jacobsen made the allegedly fraudulent statements in the instant case. Moreover, it was again shown that payments on a number of other properties were not due until *after* the statements at issue in the instant case. Indeed, there was evidence that Mr. Weisman enjoyed a good reputation in real estate circles as a successful developer. The Court concludes, therefore, that a reasonable person could not find, by clear and convincing evidence, that Ms. Jacobsen knew that Mr. Weisman had no intention of making payments on the second trust.

Finally, the evidence also showed that the financial statement regarding Mr. Weisman's net worth was not prepared by Ms. Jacobsen, but relayed through her to plaintiffs' agents. Plaintiff also offered evidence that a far lower estimate of Mr. Weisman's net worth was presented after the financial statement was presented in this case. Again, since this contradictory financial statement was prepared after the crucial statement was presented to plaintiffs in the instant case, its existence does not prove by clear and convincing evidence that Ms. Jacobsen knew the statement presented to plaintiffs was false. Moreover, both agents of Begg, Inc., who were presented with the financial statement, stated that they did not rely on this financial statement, but rather on the first trust lender, to establish Mr. Weisman's creditworthiness.

■ Plaintiffs apparently now argue that since Ms. Jacobsen was an agent of Mr. Weisman, and since Mr. Weisman knew he was not being investigated further, she had constructive knowledge of the fact that no investigation was being made of Mr. Weisman's assets. While the law of agency often holds a principal responsible for knowledge known by his agent, *see Restatement (Second) of Agency* §§ 9(3), 268, 272, it sensibly does not

hold agents responsible for knowledge known only by the principal.

In sum, the Court concludes that a reasonable person could not have found by clear and convincing evidence that Ms. Jacobsen committed fraud against plaintiffs. Accordingly, the Court grants her motion for a judgment notwithstanding the verdict on the count of fraud.

*Plaintiff's Motion for a Judgment Notwithstanding the Verdict or For a New Trial*

■] Related to the question of liability of Ms. Jacobsen for fraud is that of Mount Vernon Realty for fraud. Plaintiffs have moved for a judgment notwithstanding the verdict or for a partial new trial, pointing out the inconsistency between the jury's finding liability for fraud on the part of Ms. Jacobsen and not on the part of Mount Vernon Realty.[3] Because the Court grants defendant Jacobsen's motion notwithstanding the verdict on the fraud count, there is no longer any inconsistency. Moreover, because Jacobsen is found not liable on the question of fraud, and because there was no evidence that Mount Vernon Realty took any action or gained any knowledge other than that taken or gained through its agent, Ms. Jacobsen, Mount Vernon Realty cannot be held liable for fraud.[4] The Court denies plaintiffs' motion for a judgment notwithstanding the verdict or for a partial new trial.

*Defendant Mount Vernon Realty's Motion to Set Aside Judgment*

Defendant Mount Vernon Realty moves to set aside the judgment imposing on it liability for negligence. Mount Vernon Realty argues that since its only link to the transaction at issue in the case was that Ms. Jacobsen's employer was under a licensing agreement with Mount Vernon Re-

alty, Ms. Jacobsen cannot as a matter of law be considered the agent of Mount Vernon Realty. The Court disagrees.

Mount Vernon Realty points out correctly that in the District of Columbia licensing agreements usually do not suffice to establish agency, unless the terms of the contract grant the licensor sufficient control over the licensee's day-to-day business operations. *See Giles v. Shell Oil Corporation*, 487 A.2d 610, 612 (D.C.1985) (plaintiff whose son was shot by gas station attendant could not recover against oil company); *Quijada Corporation v. General Motors Corporation*, 253 A.2d 538, 540 (D.C.1969) (bus operating company could not recover against bus manufacturer for negligent repairs done by manufacturer's dealer). The rationale behind his generally sensible rule is clear: if the licensor does not have control over the actions of the licensee, the licensee should not be considered the agent of the licensor. Mount Vernon Realty certainly is correct in arguing that the evidence showed that it did not have control over the operations of Noah–Cummings, Inc., or Noah–Cummings' employee, Ms. Jacobsen.

■ The Court believes, however, that Ms. Jacobsen was proven to be an apparent agent of Mount Vernon Realty for the transaction at issue here. Under the settled law of agency, one who does not meet the requirements of an agent may be considered an apparent agent to a third party if 1) the putative principal represents to the third party that the putative agent is indeed his agent, and 2) the third party justifiably relies on this representation. *See Restatement (Second) of Agency* § 267 (1958). While both prongs were met in this case, the Court's discussion of the two is not mutually exclusive, as the expected re-

---

**3.** See footnote 2.

**4.** Because the Court has granted Ms. Jacobsen's motion relieving her from liability for fraud, the Court does not need to address further plaintiffs' contentions that Mount Vernon Realty must be liable for the actions and knowledge of Ms. Jacobsen in 1981 and 1982 through the fact that both were later represented in 1984 by the same attorney. As for the general contention

that the Court erred in denying plaintiffs' counsel the ability to question an official of Mount Vernon Realty about this legal representation, the Court reiterates that this questioning was properly omitted and directs both parties and counsel to the Court's order of December 6, 1988, in the related case of *Williams v. Mount Vernon Realty* (C.A. 87–1285) denying plaintiffs' motion to depose opposing counsel.

liance of potential third-parties inevitably affects whether the licensor is considered to have "represented" that the licensee is its agent.

█ Mount Vernon Realty notes that a number of courts have held that mere use of the putative principal's tradename or logo, as was used in this case, does not in itself constitute "representation" of agency or "holding out" that the licensee is indeed the licensor's agent. *See Ortega v. General Motors Corp.*, 392 So.2d 40, 43–44 (Fla. Dist.Ct.App.1981) (truck dealer held not to be apparent agent of truck manufacturer, despite use of tradename); *Apple v. Standard Oil, Division of American Oil Co.*, 307 F.Supp. 107 (N.D.Cal.1969) (gas station held not to be apparent agent of oil company, despite use of tradename on signs and on credit cards); *Westerdale v. Kaiser–Frazer Corp.*, 6 N.J. 571, 80 A.2d 91 (1951) (auto dealer held not to be apparent agent of manufacturer, despite use of tradename).

The Court believes, however, that this line of cases, involving corporations who sell their products through authorized dealers, is significantly different from the instant case, in which a real estate firm arranged to have its tradename used by a real estate professionals, and in which the firm then claims that the professional was not its apparent agent. When an automobile manufacturer or an oil company licenses its tradename, it represents to the public only that the dealer is authorized to sell the products manufactured or approved by the licensor. A customer goes to an auto dealer with a tradename, for example, because he knows he will be able to purchase an automobile that he knows was manufactured by the licensor, in whose goodwill and reputation for manufacturing the customer relies.[5] The manufacturer does not, however, represent anything other than that the dealer sells its products; it does not represent that the dealer is its agent for matters other than the selling of goods (or, in the case of gas stations, the ability

to use a common credit card). Reasonable customers do not enter the premises of the dealer in the assumption or reliance that if they slip and fall while on the dealer's premises—through negligence having nothing to do with the manufacturer/licensor—that they will be able to recover against the manufacturer/licensor. Accordingly, courts sensibly hold that the dealer/licensee is not the apparent agent of the manufacturer/licensor.

The situation is far different, however, when a real estate firm licenses a real estate professional. Here, the licensee does not simply sell a good manufactured by or distribute a credit card authorized by the licensor. The licensee "sells" her expertise, advice, and fiduciary capability. A customer reasonably depends on the name, goodwill, and reputation of the real estate firm whose tradename is used by the licensee; he puts his trust in the licensee to advise him on a potentially long-term financial arrangment. It would strain credulity to consider that the purpose of the licensing agreement was other than to enable Mount Vernon Realty, one of the largest real estate firms in the Washington area, and Noah–Cummings, the employer of Ms. Jacobsen, to convince the public that the expertise, reputation, credibility, and *dependability* of Mount Vernon Realty were behind Noah–Cummings' employees, to the financial benefit of both firms. Indeed, the president of Mount Vernon Realty testified to this effect at trial. As plaintiffs have pointed out, Noah–Cummings' employees received business cards and stationery with the name of Mount Vernon Realty printed on them and Mount Vernon Realty's advertisements in the phone yellow pages listed Noah–Cummings as an affiliate.

Unlike a car manufacturer or an oil company, a real estate firm should and must expect the client who deals with his licensee/professional to believe that this real estate professional with whom he deals, licensee or not, is backed, financially and otherwise, by the firm to which she has

---

**5.** If the automobile is defective, he may sue the licensor/manufacturer, even if there is no privity of contract with the manufacturer. *See Mac-* *Pherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916).

presented herself as being associated. Thus, the firm must expect the client to believe that the real estate professional who uses the tradename of the firm is the firm's agent.

Accordingly, the Court finds that the evidence and the law sustains the finding that Mount Vernon Realty, through its arrangement with the employer of Ms. Jacobsen, did represent that Ms. Jacobsen was its agent.

■ The Court also finds that the evidence showed that plaintiffs, through their agents, met the second prong of the apparent agency test—justifiable reliance. *Restatement (Second) of Agency* § 267. Defendant Mount Vernon Realty admits that plaintiffs' listing agents, Ms. Madden and Ms. Wojciak, stated that they relied on Mount Vernon Realty's reputation. Far from being merely an "acknowledgment" of the existance of the licensing arrangment, such testimony should be accepted for exactly what it stated—that Ms. Jacobsen's apparent authority as an agent of Mount Vernon Realty, a large and well-known real estate firm, sensibly played a significant role in the decision of plaintiffs and their agents to enter into the transaction.

Defendant Mount Vernon Realty argues, however, that plaintiffs did not meet their burden of showing that they would not have entered into the transaction "but for" their reliance on Mount Vernon Realty's reputation. Defendant cites no authority, and the Court believes there should be no such authority, for the existence of such a burden. Once apparent authority and reliance has been shown, it should not be incumbent on the plaintiff to try to prove the perhaps-impossible fact that they would

have not have entered into the transaction had they not relied.

Again, defendant's citation to a case involving a gas station, *Arceneaux v. Texaco, Inc.,* 623 F.2d 924 (5th Cir.1980), is not on point. In that case, the Fifth Circuit sensibly held that advertisements about Texaco did not in themselves prove that plaintiff "entered the service station because he believed that Texaco was its operator." *Id.* at 927. In the instant case, there was direct evidence that plaintiffs' agents relied, and sensibly so, on the representation that Ms. Jacobsen was an agent for, and backed by the reputation of, Mount Vernon Realty.[6]

Finally, the Court concludes that the reliance was "justifiable," viewed within the required objective constraints. *See Porter v. Sisters of St. Mary,* 756 F.2d 669, 674 (8th Cir.1985). Defendant Mount Vernon is incorrect in apparently arguing that plaintiffs had to prove that their agents were reasonable in assuming that Ms. Jacobsen, by reason of her apparent agency, could "guarantee" the ability of Mr. Weisman to met his obligations. No such "guarantee" is at issue; rather, the Court finds that plaintiffs and their agents clearly were justified in relying on the apparent agency of Ms. Jacobsen and the reputation of Mount Vernon Realty.

In sum, the Court finds that the law and the evidence support the finding of liability under negligence for Mount Vernon Realty through the apparent agency created by its licensing arrangement.

*Orders*

Accordingly, this 15th day of December, 1988, it is

---

**6.** The Court's conclusions on apparent authority and reliance follow to an extent the reasoning in *McDonald v. Century 21 Real Estate Corp.,* 111 Wis.2d 600, 331 N.W.2d 606 (Ct.App.1983). In that case, the court found that plaintiff relied on the apparent agency of a licensee who displayed a number of trade symbols of Century 21, after plaintiff had seen television commercials referring to the extensive resources available to Century 21's "neighborhood professionals." While this case involved even stronger evidence of apparent authority than does the

instant case, it does not mean that a real estate firm must brag of "neighborhood professionals" for apparent authority or reliance to be established. Rather, the Court reads the opinion as authority for the proposition that apparent agency and justifiable reliance can be found when a real estate firm licenses its tradename and goodwill, leads consumers to believe that the licensees are backed by the larger organization, and then tries to avoid liability by arguing that there is no apparent authority.

ORDERED that defendants' motions to amend judgment regarding the amount of damages is GRANTED; it is further

ORDERED that the amount of damages awarded to plaintiffs is hereby remitted from $400,000 to $195,000; it is further

ORDERED that defendant Betty Jacobsen's motion for a judgment notwithstanding the verdict is GRANTED and that judgment on the fraud count be entered in her favor; it is further

ORDERED that plaintiffs' motion for a new trial or for a judgment notwithstanding the verdict is DENIED; it is further

ORDERED that defendant Mount Vernon Realty's motion to set aside judgment on the negligence count against Mount Vernon Realty is DENIED.