886 F.2d 758
 15 Fed.R.Serv.3d 342, 28 Fed. R. Evid. Serv. 1231
 Helen Nichols MILLS, Alice Mills Nolley, Mary Mills Corkern,
Robyn Mills Olsan, Jody Hart Mills and Raymond
Matthew Mills, Plaintiffs-Appellants,
v.
BEECH AIRCRAFT CORPORATION, INC., Defendant-Appellee.
 No. 88-4712
 Summary Calendar.
United States Court of Appeals,
Fifth Circuit.
 Oct. 26, 1989.
 
 Joseph L. Lemoine, Jr., Lafayette, La., for plaintiffs-appellants.
 Thomas C. Gerity, Robert A. Miller, Frank A. Wood, Jr., Jackson, Miss., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before GEE, DAVIS and JONES, Circuit Judges:
 GEE, Circuit Judge:
 
 
 1
 Plaintiffs appeal from the judgment, entered on a jury verdict, for defendant Beech Aircraft Corporation in a wrongful death action arising out of the crash of a private airplane. We affirm.
 
 
 2
 In July 1983, Alva Ray Mills and Lonnie Bearry took off from Baton Rouge, Louisiana, in a 1961 Model 35 Beech Bonanza, registered as N1317Z, and flew to an airport in McComb, Mississippi, where they performed practice instrument approaches. At mid-morning, the pilot of N1317Z informed the McComb Flight Service Station that they were returning to Baton Rouge. Between five and ten minutes later, the plane crashed, killing both Mills and Bearry.
 
 
 3
 In March 1985 the plaintiffs, survivors of Alva Ray Mills, filed a products liability action against Beech Aircraft Corporation, alleging that negligent and defective design of the airplane's control assembly caused the crash. Three years later, in March of 1988, the plaintiffs moved to consolidate the action with Bearry v. Beech Aircraft Corp., Civ. No. S87-0530(GN), in the United States District Court for the Southern District of Mississippi. That motion was denied, and the court entered an Order on its own motion changing venue from the Southern Division to the Jackson Division of the Southern District of Mississippi.
 
 
 4
 At trial, opposing theories of the case were presented: The plaintiffs' was that a turnbuckle on the chain located inside the control arm became jammed against a sprocket, causing the ailerons[1] to jam, and resulting in loss of control of the airplane. The defendant's was that the airplane simply ran out of fuel. The jury returned a verdict for Beech Aircraft, and final judgment was entered on July 5, 1988. Upon denial of their motion for a new trial, the plaintiffs noticed this appeal.
 
 Venue
 
 5
 The plaintiffs contend that the court abused its discretion in moving venue from the Southern Division to the Jackson Division. This contention is without merit.
 
 
 6
 The diversity action was filed in the Southern District of Mississippi and assigned to Judge Dan M. Russell. None of the parties objected to this venue. About three years later, Judge Russell, by letter, inquired of both parties as to the propriety of venue in the Southern Division and informed them that he was considering transferring venue to the Jackson Division. Both sides responded to this inquiry by letter. In their letter, the plaintiffs asked that venue not be changed because of 1) anticipated docket problems in the Jackson Division; 2) anticipated hometown sympathy for Beech counsel in the Jackson Division; and 3) more convenient accommodations for the plaintiffs in the Southern Division. Defendants likewise expressed concern over possible docket problems in the Jackson Division, but did assert that Jackson would be more convenient to their counsel, to out-of-town witnesses, and to witnesses from McComb, the site of the crash. Judge Russell then transferred the case pursuant to 28 U.S.C. Section 1404. The plaintiffs did not object to this order. On appeal, the plaintiffs, while conceding that venue in Jackson Division was proper, maintain that their choice of venue should not have been disturbed.
 
 
 7
 Section 1404 authorizes a district court "[f]or convenience of the parties and witnesses, in the interests of justice" to move venue to any other district or division where the suit might have been brought. 28 U.S.C. Section 1404(a) (1982). "Decisions to effect 1404 transfers are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion." Jarvis Christian College v. Exxon Corp., 845 F.2d 523, 528 (5th Cir.1988). Such transfers may be made sua sponte. See id.
 
 
 8
 The facts of this case do not reveal an abuse of discretion by the district judge. The crash of N1317Z occurred within the Jackson Division. Most of the factual witnesses were from McComb, which is about 56 miles closer to Jackson than to Biloxi. The plaintiffs do not reside in the Southern Division and the change in venue did not appreciably increase the distance they would be required to travel for trial. The change of venue moved this case to a different division within the same district about 150 miles away. It is not as if the case was "consigned to the wastelands of Siberia." See Jarvis Christian College, 845 F.2d at 528.
 
 Consolidation
 
 9
 The plaintiffs maintain that the district court abused its discretion in failing to consolidate this case with Bearry v. Beech Aircraft Corporation, Civ. No. S87-0530(GN), which action arose out of the same airplane crash and was pending in the Southern District of Mississippi at the time of the motion.
 
 
 10
 Consolidating actions is proper when two or more district court cases involve common questions of law and fact and the district judge finds that consolidation would avoid unnecessary costs or delay. Fed.R.Civ.P. 42; St. Bernard General Hospital, Inc. v. Hospital Service Association of New Orleans, Inc., 712 F.2d 978, 990 (5th Cir.1983), cert. denied, 466 U.S. 970, 104 S.Ct. 2342, 80 L.Ed.2d 816 (1984). "A trial court has broad discretion in determining whether to consolidate a case pending before it." Alley v. Chrysler Credit Corp. 767 F.2d 138, 140 (5th Cir.1985). Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial. St. Bernard, 712 F.2d at 990.
 
 
 11
 Bearry's survivors filed suit against Beech in the Southern Division of the Southern District of Mississippi in August of 1987, more than two years after the present action was filed. The final pretrial conference for the present action was held on September 9, 1986 with the final pretrial order being filed on July 23, 1987. The plaintiffs in the present action filed a motion for consolidation on March 24, 1988. On May 6, 1988, the court entered a Memorandum Order denying consolidation. In its Order, the court noted that counsel for Bearry had advised the court that "he did not want to be confined to the discovery performed or the pretrial order submitted in Mills; and that he expected the need to designate several experts and depose certain Beech employees which have not and will not be designated or deposed by the Mills' plaintiffs." The district court concluded that Mills was ready for trial and Bearry was not.
 
 
 12
 We hold that the denial of consolidation in this case was not an abuse of the district court's broad discretion.
 
 Evidentiary Error
 
 13
 The plaintiffs allege that the district court erred in several evidentiary rulings. Evidentiary rulings are accorded considerable deference on appeal; "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Fed.R.Evid. 103(a); see Hardy v. Chemetron Corp., 870 F.2d 1007 (5th Cir.1989). Bearing this standard in mind, we consider each of the contested rulings in turn.
 
 
 14
 The "French Letter"
 
 
 15
 The "French letter" is a copy of a letter, written in French and dated June 26, 1969, from the Director of Aeronautical Services for the Bureau Veritas of France (a rough equivalent of the United States Federal Aviation Administration) to Beech Aircraft Corporation and containing a partial English translation of its text in its margin. The letter informed Beech that one of the Bureau's Districts wrote them concerning an error in the installation of the control chains which caused aileron lock-up and accordingly suggested some changes in the airplane shop manual.
 
 
 16
 The plaintiffs attempted to have the letter admitted during direct examination of Dr. Silver, an expert witness of the plaintiffs who opined that the crash of the airplane was due to control chain misinstallation.[2] The plaintiffs purpose in offering the letter was to show that aileron lock-up due to control chain misrigging had occurred in the past and to demonstrate Beech Aircraft's knowledge of the problem. The court determined that the letter would be more prejudicial than relevant and refused its admission into evidence.
 
 
 17
 In order to obtain the admission of evidence concerning a prior related accident, the proponent must show that the accident occurred under circumstances "substantially similar" to the case at bar. Hardy, 870 F.2d at 1009. In the present case, the letter does not state under what conditions the lock-up occurred, does not say whether an accident resulted, and does not specify on which type airplane the incident occurred. The probative value of the letter to show the possibility of the specific defect alleged or Beech's knowledge of that defect is thus quite faint. The district court did not abuse its discretion in determining the letter to be more prejudicial than relevant.
 
 The Beech Baron Shop Manual
 
 18
 At trial, the plaintiffs attempted to introduce into evidence a 1983 revision of the Beech Baron shop manual. This manual allegedly gives a more detailed explanation of how to install the turnbuckles on the control arm chain than the Beech Bonanza shop manual. The district court excluded the manual as evidence of a subsequent remedial measure under Federal Rule of Evidence 407. That rule states in part: "When, after an event, measures are taken which if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event." We have held the rule to apply in actions involving the issue of strict liability. Grenada Steel Industries v. Alabama Oxygen Co., 695 F.2d 883, 888 (1983).
 
 
 19
 The Appellants maintain that Rule 407 applies only to measures taken in response to the accident in question, citing as authority Arceneaux v. Texaco, Inc., 623 F.2d 924 (5th Cir.1980), cert. denied, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981). In Arceneaux, the plaintiffs sought to show that the faulty design and placement of a pickup truck's gas tank contributed to the truck's passengers being burned. Evidence of changes in the placement of the gas tank on later models was excluded by the district court under Rule 407. On appeal, we determined that the changes, made three years before the accident in that case, "were not implemented in response to the 'event,' " hence Rule 407 had been incorrectly applied. Id. at 928.[3]
 
 
 20
 Rule 407, as applied to product liability actions, prevents evidence of subsequent remedial measures from being used as a defendant's admission that a design was defective. In Arceneaux the evidence demonstrated that the changes were made solely in response to new federal environmental requirements, not from incidents involving the burning of passengers. As these remedial measures were clearly not made in response to the accident in that case, or to an accident arising out of the same or similar circumstances, they could not have been construed as an admission of a defective design. In the present case, as in the vast majority of the cases, it is not known why the changes were made. Instead of attempting to prove or disprove the reasons for subsequent product changes, we should
 
 
 21
 consider the probative value of such evidence on the point at issue. The real question is whether the product or design was defective at the time the product was sold. The jury's attention should be directed to whether the product was reasonably safe at the time it was manufactured.... The introduction of evidence about subsequent changes in the product or its design threatens to confuse the jury by diverting its attention from whether the product was defective at the relevant time to what was done later. Interpreted to require the evidence to focus on the time when the product was sold, Rule 407 would conform to the policy expressed in Rule 403, the exclusion of relevant information if its probative value is substantially outweighed by the danger of confusion.
 
 
 22
 Grenada Steel, 695 F.2d at 888.
 
 
 23
 In the present case, admission of the Beech Baron manual could have been construed by the jury as an admission by Beech that its Bonanza manual's control chain rigging instructions were defective. Rule 407 was correctly applied.[4]
 
 
 24
 The Appellants contend that the Baron shop manual was admissible to show the feasibility of providing a better installation instruction. The feasibility exception to Rule 407 does not apply when feasibility is not in controversy. See Grenada Steel, 695 F.2d at 888-89. The defendants in the present case did not contest the feasibility of a better installation instruction, but rather maintained that the instructions in the Bonanza manual were acceptable. The Beech Baron shop manual was properly excluded by the district court.
 
 Section 102 of the 1925 Aeronautical Code
 
 25
 The plaintiffs maintain that the district court improperly excluded Section 102 of the Aeronautical Safety Code, published in 1925, by the United States Bureau of Standards and the Society of Automotive Engineers. This section mandated certain criteria for the design of aircraft controls. The plaintiffs concede that the 1925 code did not represent the applicable law or regulations when N1317Z was manufactured in 1961.[5] In excluding the document, the district judge noted that were the guidelines admitted, the jury might believe the code to apply at the time of the plane's manufacture. We have no difficulty in concluding that the court did not abuse its discretion in excluding the evidence.
 
 The Exemplar Control Arm
 
 26
 A new control arm, exemplary of the arm Beech originally installed in N1317Z, was offered into evidence for demonstration only of the type of yoke which was on N1317Z when it originally left the factory. The arm was introduced pursuant to the deposition of John Evans, who had identified the arm as almost identical to the one in N1317Z at the time it was sold to the decedents.
 
 
 27
 The plaintiffs maintain that the exhibit should have been excluded, alleging that it had been altered between the time of Mr. Evan's examination and the time of trial. Specifically, the plaintiffs allege that a safety wire had been removed and that the chain was overtightened.
 
 
 28
 The plaintiffs were allowed to question their expert, Mr. Bray, extensively concerning these relatively minor changes in the arm's condition; and Mr. Bray was allowed to release the tension in the control arm. The plaintiffs concede that due to the remedial action taken by Mr. Bray any error in admitting the control arm into evidence "might have been harmless." See Appellants Brief at 48. Under these circumstances, we are unable to see how a substantial right of the plaintiffs was affected by the admission of the control arm.
 
 Mr. Bray's Flight Tests
 
 29
 The district court excluded evidence of flight tests performed by the plaintiffs' expert, Mr. Bray. These were conducted the week before trial, and the defendants first learned of them when Mr. Bray's testimony was offered at trial. Finding that the defendants had been deprived of the opportunity to obtain an expert to analyze and testify about the tests, the court excluded them.
 
 
 30
 Fed.R.Civ.P. 26(e) expressly imposes upon a party who has responded to a discovery request a continuing duty to make reasonable supplemental responses "with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony." As the plaintiffs failed to inform the defendants of the flight tests conducted by Mr. Bray after his deposition was taken, the trial court properly exercised its discretion in excluding the test results.
 
 Improper Comments By Defendant's Counsel
 
 31
 Finally, Appellants contend with some force that comments by Mr. Gerity, the counsel for the defendants, were unduly prejudicial and that as a result a new trial must be granted. These comments consisted of: intimations that plaintiffs' counsel, Mr. Lemoine, was perpetrating a fraud on the court; a reference to plaintiffs' counsel as a "night club singer;" repeated references to the amount of fees being earned by the plaintiffs' experts; and statements made allegedly to evoke regional bias.
 
 
 32
 Intimations that plaintiffs' counsel was perpetrating a fraud on the court were made in reference to Mr. Lemoine's handling of one of the exhibits and his attempt to introduce into evidence a certain shop manual. The first incident was on June 16, 1988 and the second was on the morning of June 20, 1988. No motion for mistrial or request for an instruction to the jury was made at either time.
 
 
 33
 Mr. Gerity's reference to Mr. Lemoine as a "night club singer"[6] occurred on the afternoon of June 20. It was at this time that counsel for plaintiffs' moved for a mistrial based on this reference and on the "fraud on the court" intimations. Judge Russell denied this motion, finding no prejudice to have occurred. The judge also declined to give an instruction to the jury concerning the intimations of fraud. The court reasoned that, as no motion was made when these references were made, to give a limiting instruction at the time the motion was actually made would only confuse the jury and might possibly magnify any harm caused by the remarks.
 
 
 34
 The trial judge is in a far better position than an appellate court to evaluate the prejudice flowing from counsel's improper comments during trial and to determine the most effective response to ensure a fair trial. See South Hampton v. Stinnes Corp., 733 F.2d 1108, 1123 (5th Cir.1984); Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 781 (5th Cir.1983). After reviewing the allegedly improper remarks and the court's handling of them, we are unable to say the trial judge abused his discretion in denying the motion for mistrial or in refusing to give a limiting instruction.
 
 
 35
 The "regional bias" statements and the references to the amount of compensation being paid the plaintiffs' experts were made, for the most part, during Mr. Gerity's closing argument. Counsel for the plaintiffs failed to object to the comments at trial, but now contend that a new trial should be granted. At the outset, we reiterate our rule that improper argument by counsel "may be the basis for a new trial where no objection has been raised only 'where the interest of substantial justice is at stake.' " Hall v. Freese, 735 F.2d 956 (5th Cir.1984). In deciding whether to grant a new trial under such circumstances we must consider, in addition to the comments of counsel, the counsel's trial tactics as a whole, the evidence presented, and the ultimate verdict in determining whether manifest injustice would result by allowing the verdict to stand. Id. at 962.
 
 
 36
 The portion of Mr. Gerity's closing argument which contains the objectionable remarks is as follows:
 
 
 37
 Mr. Lemoine said that we didn't bring any experts to Court. That's right. We saved $2,000 a day; that's what we did. Because we didn't bring Mr. Silver in here at $1,200 a day and we didn't bring Mr. Bray in here at $800 a day. You know why we didn't? Because we don't have to have a $2,000 a day expert to come in here and explain to each of you sensible folks what whoo--putt, putt, putt--whoo--putt, putt, putt--whoo means. That's the sound of the airplane running out of gas. Every school child knows that. No city slicker from Connecticut or California earning more money than any of us ever heard of had to come here and tell us that that's the airplane running out of gas.
 
 
 38
 * * *
 
 
 39
 Mr. Bray or Mr. Silver says, "Well, let's see." You've seen Johnny Carson when he does Karnac at night, you know, and he holds the envelope up to his head and he guesses the question. Mr. Bray must have done that. He must have put the envelope up to his head and said, "I think the airplane was at 3,000 feet. I'll come down and tell these Mississippi folks that's where it was and they'll believe me."
 
 
 40
 The plaintiffs compare the comments made by Mr. Gerity to those made in Hall v. Freese, 735 F.2d 956 (5th Cir.1984) in which we set aside the verdict of a jury despite the absence of a timely objection. The comparison is not profitable. In Hall, defense counsel deliberately misstated, and argued outside, the record. Id. at 961, 962. Among the improper remarks were untrue or unsubstantiated statements that the plaintiff engaged in illegal drug use, was involved in a love affair with a married man and flew up for depositions in a private plane. Id. Despite the highly improper comments made by counsel in that case, we would nonetheless have refused to reverse the district court on the basis of these remarks alone, as a timely objection was not made. Id. at 962. Only after evaluating the evidence, reviewing generally the trial tactics of counsel, and evaluating the ultimate verdict did we determine that manifest injustice would result if the jury verdict were allowed to stand. Id.
 
 
 41
 By contrast to the comments in Hall, the comments objected to in the present case were supported by the record and concerned--at least tangentially--the credibility of the plaintiffs' experts and their testimony. While we do not necessarily approve of the closing argument, we are unable to say that it evoked such passion and prejudice that the rights of the plaintiffs were unduly impaired. In reviewing the record as a whole and evaluating the ultimate verdict of the jury, we are not convinced that the verdict is inconsistent with substantial justice.
 
 
 42
 The Appellants advance numerous other assignments of error, which we have carefully considered, regarding the conduct of Judge Russell during the trial. None merits discussion; and as we find no reversible error in the proceedings below, we AFFIRM judgment of the district court.
 
 
 
 [1]
 Ailerons allow an airplane to bank and roll and are activated by side-to-side movements of the wheel attached to the control arm
 
 
 [2]
 The court had rejected previous offers of the letter for different reasons. As we conclude that the court did not err in ruling that its prejudicial effect outweighed its probative value, the previous rulings concerning this letter need not be examined
 
 
 [3]
 This court nonetheless held that the evidence was properly excluded because it was irrelevant under Federal Rules of Evidence 401 and 402. Id
 
 
 [4]
 Even if Rule 407 did not apply, the manual would still have been properly excluded under Rule 403. The Baron shop manual was for a different airplane than N1317Z. Moreover, there was no evidence to suggest that any manual was used in the rigging of the control arm chains in N1317Z
 
 
 [5]
 Testimony was admitted concerning federal regulations in effect at the time the control arm in issue was manufactured
 
 
 [6]
 This remark was made in reference to plaintiffs' counsel moving about the courtroom during trial holding a microphone. The court at one point cautioned plaintiffs' counsel against "parading in front of the jury" and "dancing around the court room."