Antony BROWN, et al., Plaintiffs,

v.

PRO FOOTBALL, INC., d/b/a Washington Redskins, et al., Defendants.

Civ. A. No. 90–1071(RCL).

United States District Court, District of Columbia.

May 12, 1993.

Joseph A. Yablonski, Yablonski, Both & Edelman, Washington, DC, for plaintiffs.

Gregg H. Levy, Covington & Burling, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case is a class action anti-trust suit brought by 235 National Football League ("NFL") football players against the NFL and its twenty-eight member teams. The gravamen of the suit is the undisputed fact that in 1989, defendants paid each plaintiff a flat rate of $1000 per week for his "developmental squad"[1] services.

In an earlier opinion, the court determined that defendants' paying of a fixed salary constituted a violation of the Clayton Act and ordered summary judgment in favor of plaintiffs as to liability. In September of 1992, the court held a ten-day trial, after which a jury returned a special verdict in favor of all plaintiffs: the jury first found that each class member had been injured; it then entered the dollar amount of each class member's damages. Pursuant to the Clayton Act, the court trebled the damages and entered judgment of $30,349,642.00 in favor of plaintiffs.

Now before the case are several post-trial motions. Each will be addressed in turn.

---

1. In 1989, each team maintained a development squad of up to six players. Developmental squad players were eligible for practice and could, with some restrictions, be activated to the team's for-ty-seven man roster; however, the developmental squads members could not play in regular season games unless activated.

## I. DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL.

Defendants have moved this court for judgment as a matter of law under Fed. R.Civ.P. 50(b) or, in the alternative, for a new trial under Rule 59(a). Both aspects of this bifurcated motion will be denied.

### A. *Motion for Judgment as a Matter of Law.*

Defendants claim that there is "no legally sufficient evidentiary basis" for the jury's verdict, quoting Fed.R.Civ.P. 50 Advisory Committee's Note (1991 Amendment to Rule 50(b)), and thus ask this court to set the jury's verdict aside. "The standard for judging a motion for judgment notwithstanding the verdict[2] ... is whether a reasonable person could have reached such a verdict upon the evidence presented." *Ago v. Begg, Inc.*, 705 F.Supp. 613, 616 (D.D.C.1988), *aff'd*, 911 F.2d 819 (D.C.Cir.1990). Of course, the court "is required to evaluate the evidence under the presumption that the jury resolved all factual disputes in favor of the prevailing party." *Morgan v. District of Columbia*, 824 F.2d 1049, 1056 (D.C.Cir.1987).

In this case, defendants raise five issues in support of their Rule 50(b) motion. The court finds that none reaches this circuit's standard for Rule 50(b) post-trial judgment.

■ *First*, defendants claim that the salary figures on which the jury may have relied were negotiated[3] for "fundamentally different jobs." Yet, there was significant evidence that, *inter alia*, the 1989 developmental squad players were performing roles comparable to individuals who were on injured reserve in 1988 (and therefore received their full salary—the 1988 analogue of the activation salary). Although there was evidence that the jobs were different, there also was sufficient evidence—contrary to defendants' assertions—for a reasonable jury to find that the jobs—although not identical—were nonetheless comparable.

■ *Second*, defendants contend that the 1990 salaries negotiated by some class members did not corroborate plaintiffs' damage claims. In light of the overwhelming evidence plaintiffs offered in support of their anti-trust damages, contesting this one piece of evidence is hardly efficacious. In fact, to corroborate their damage figures, plaintiffs proposed several different methods of analysis, and examining 1990 salaries was only one of these. Even if these figures were excluded, therefore, there is ample evidence to support the jury's findings.

However, defendants' arguments are unsuccessful on the merits, as well, as this evidence is corroborative and properly admitted. The court determined at trial that, for the purposes of determining a "just and reasonable estimate" of plaintiffs' damages, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124, 89 S.Ct. 1562, 1577, 23 L.Ed.2d 129 (1969), the 1990 salary figures were probative. Nothing has changed since September.

*Third*, defendants assert that a free market analysis places the value of plaintiffs' services at somewhat *less* than $1000 per week and that there is no contradictory evidence. However, there was ample evidence—expert and otherwise—for a reasonable jury to conclude that the actual value of these players' services was greater than $1000 per week. (Not surprisingly, the jury apparently gave little credit to the testimony of defendants' witnesses who asserted that defendants *overpaid* players; certainly this would be one of the first times anti-trust violators conspired to deprive themselves of their ill-gotten economic advantage.)

*Fourth*, defendants contest plaintiffs' use of apparent savings in salary costs defendants enjoyed in 1989, the year defendants

---

2. The term "judgment notwithstanding the verdict" (or "j.n.o.v.") has been replaced with "judgment as a matter of law."

3. When each plaintiff signed a developmental squad contract, he negotiated the salary he would be paid if the team chose to activate him (the "activation salary"). To calculate damages, plaintiffs' expert (Dr. Bruce Hamilton) took each player's activation salary (which was not paid to the player while the player remained on the developmental squad) and subtracted from it the actual compensation the player had received ($1000 per week).

utilized the developmental squads. Contrary to defendants' position, however, the evidence indicated that the change from "stashing" active players on injured reserve (and paying them full salaries) to placing players on development squads (and paying them $1000 per week) resulted in a savings of approximately $12 million in salaries. Defendants contend that the savings were attributable to veteran players, but plaintiffs presented evidence that indicated otherwise. Once again, there was sufficient evidence (with or without this figure) for the jury to return the verdict it did.

*Fifth* (and finally), defendants protest plaintiffs' use of certain individuals as representative of the class claims. However, the evidence was sufficient for a reasonable jury to find that, whatever the circumstances of any individual player, the plaintiffs' method of calculating damages was appropriate and resulted in a fair approximation of damages for *all* members of the class.

In general, plaintiffs' evidence was qualitatively and quantitatively great. They approached the damages issue from several different angles, and each method of approximating damages arrived at a similar figure. The court finds that it was reasonable for the jury to find as it did, and that defendants have not met their burden under Rule 50(b) to warrant the ordering of a judgment as a matter of law. Therefore, this portion of defendants' motion is denied.

### B. *Motion for a New Trial.*

Defendants move, in the alternative, for a new trial under Rule 59(a). Plaintiffs assert that the standard for warranting a new trial is strict:

> Generally, . . . a Rule 59(a) motion should be granted only where the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'

*Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176 (D.D.C.1986). Defendants posit two arguments in favor of their motion; neither contention warrants a new trial.

*First*, defendants assert that the verdict was not supported by the evidence. As addressed above, however, the verdict was not "contrary to the 'great weight' or 'clear weight' of the evidence," *Thompson v. International Ass'n of Machinists*, 614 F.Supp. 1002, 1013 (D.D.C.1985); rather, it was supported by the great weight of the evidence. A court should not invade the realm of the jury without cause, and defendants have shown no reason for the court to overturn a lawful verdict in this case.

*Second*, defendants argue that evidence at trial was prejudicial and tainted the jury's verdict. Defendants' assertions can be reduced to two subjects: (1) post–1989 evidence; and (2) references to defendants' antitrust violations.

In the first category is evidence that some class members made the rosters of NFL teams in 1990 and 1991 as well as evidence that some class members negotiated signing bonuses and/or higher salaries after 1989. Rather than being irrelevant, this evidence was one of several ways plaintiffs justified their damage figures. And, rather than being prejudicial, this evidence helped to quantify an inherently difficult measurement, that of plaintiffs' fair anti-trust damages. The inclusion of this evidence does not constitute a clear miscarriage of justice as necessary for a new trial under Rule 59(a).

The second category includes references to prior anti-trust decisions against defendants and references to defendants' purposes in adopting the implementing resolution establishing the developmental squads. Any reference to the NFL's monopoly power, however, was perfectly appropriate (for instance, in attacking the credibility of defendants' witnesses); again, nothing in this category rises to the clear miscarriage of justice level.

Thus, defendants have demonstrated no basis for ordering a new trial. If anything, overturning the jury's verdict would lead to the "seriously erroneous result" rule 59(a) is designed to avoid. The "in the alternative" portion of defendants' motion therefore also is denied.

## II.  PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION.

■ Plaintiffs have filed a motion for a permanent injunction which would prevent defendants from establishing a uniform regular-season salary for any category of players. The standard for entering a permanent injunction in this type of litigation was established by the Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). The burden is on plaintiffs to establish that an injunction is necessary.

The court finds that plaintiffs have met their burden in this case. Defendants have several times been adjudged to be in violation of anti-trust laws. Since 1989, the year of defendants' violation, defendants have not disclaimed future anti-trust violations but rather merely have entered into year-by-year partial settlements for the payment of practice players. And, as of the time of their opposition, defendants still refuse to disclaim the possibility of future price-fixing; instead, they assert, via the declaration of current Commissioner Paul Tagliabue, that the NFL "will not implement unilaterally a League-wide wage scale in 1993 and has no plans to do so at any other time."

Defendants' past practices and current position warrant entry of a permanent injunction. There is the clear potential that defendants will again adopt a uniform price schedule. As of now, the commissioner has only stated that the NFL will not adopt a uniform wage scheme *in 1993*. And, the commissioner's ability to enforce even this policy is limited as the owners of the twenty-eight member teams could change the policy at any time. Plaintiffs have demonstrated that a permanent injunction is necessary to ensure that the policies of the Clayton Act are implemented. Plaintiffs' motion therefore is granted, and an order entering a permanent injunction will accompany this memorandum opinion.

## III.  DEFENDANTS' MOTION TO DEFER PROCEEDINGS ADDRESSING ATTORNEYS' FEES.

■ Defendants contend that the court should defer proceedings regarding plaintiffs' attorneys' fees until after this matter has been appealed, and have attested that they will not appeal any order of the court regarding fees. Promising that the attorneys' fees question will "trigger vigorously contested supplemental proceedings," Defendants' Memorandum in Support of Defendants' Motion at 1, defendants suggest that it would be more efficient to defer these proceedings until after defendants appeal this case (when, defendants hope, the courts' rulings will have been overturned and defendants' attorneys' fees obligations will have been obviated).

However, as defendants have asserted that the fees question is likely to spawn further litigation, the court determines under Local Rule 215 that, in the interest of justice, the court should dispose of the fees question now. The court is more familiar with the facts now, and the policy of the Clayton Act is to ensure that plaintiffs' counsel be rewarded for their private enforcement efforts at full value, not at some time-devalued future rate.[4]

Defendants' motion to defer proceedings addressing plaintiffs' attorneys' fees therefore is DENIED. The accompanying order will address the procedures for resolving the issue.

## IV.  PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' STAY WITHOUT POSTING A BOND OR OTHER SECURITY.

■ Plaintiffs have moved the court to reconsider its October 20, 1992, order in which the court granted a stay of execution of the judgment in this case without requiring that defendants post a bond or any other security.

---

4.  Interest does not accrue on attorneys' fees; therefore, every day's delay, as a practical matter, reduces the value of the award.

No facts have changed since the court issued its October ruling, and plaintiffs have failed to demonstrate that the court should reconsider that order.

Therefore, plaintiffs' motion is denied.

## V. DEFENDANTS' REQUEST FOR ORAL ARGUMENT.

Defendants have requested that these motions be addressed at oral argument. The court finds that the arguments made in the parties' papers are sufficient and that oral argument is unnecessary. Therefore, defendants' request is denied.

An appropriate order accompanies this memorandum opinion.

## ORDER

Upon consideration of the representations of the parties, and for the reasons stated in the accompanying memorandum opinion, it is hereby ORDERED that:

1. Defendants' motion for judgment as a matter of law or, in the alternative, for a new trial is DENIED.

2. Plaintiff's motion for permanent injunction is GRANTED. An appropriate order accompanies this order.

3. Defendants' motion to defer proceedings addressing attorneys' fees is DENIED.

   a. Plaintiffs shall file an updated or revised application for attorneys' fees within ten days of the date of this order;

   b. Defendants shall file their opposition within ten days thereafter; and

   c. Plaintiffs shall file their reply within five days thereafter.

4. Plaintiffs' motion for reconsideration of the court's order granting defendants' stay without posting a bond or other security is DENIED.

5. Defendants' request for oral argument is DENIED.

SO ORDERED.

## PERMANENT INJUNCTION

Upon consideration of Plaintiffs' Motion for Permanent Injunction and the Court being fully apprised, it is hereby

ORDERED, ADJUDGED AND DECREED that Defendants PRO FOOTBALL, INC., d/b/a WASHINGTON REDSKINS; THE FIVE SMITHS, INC., d/b/a ATLANTA FALCONS; BUFFALO BILLS, INC., d/b/a BUFFALO BILLS; CHICAGO BEARS FOOTBALL CLUB, INC. d/b/a CHICAGO BEARS; CINCINNATI BENGALS, INC., d/b/a CINCINNATI BENGALS; CLEVELAND BROWNS, INC., d/b/a CLEVELAND BROWNS; DALLAS COWBOYS FOOTBALL CLUB, LTD., d/b/a DALLAS COWBOYS; PDB SPORTS, LTD., d/b/a DENVER BRONCOS; THE DETROIT LIONS, INC., d/b/a DETROIT LIONS; THE GREEN BAY PACKERS, INC., d/b/a GREEN BAY PACKERS; HOUSTON OILERS, INC., d/b/a HOUSTON OILERS; INDIANAPOLIS COLTS, INC., d/b/a INDIANAPOLIS COLTS; KANSAS CITY CHIEFS FOOTBALL CLUB, INC. d/b/a KANSAS CITY CHIEFS; THE LOS ANGELES RAIDERS, LTD. d/b/a LOS ANGELES RAIDERS; LOS ANGELES RAMS FOOTBALL COMPANY, INC., d/b/a LOS ANGELES RAMS; MIAMI DOLPHINS, LTD., d/b/a MIAMI DOLPHINS; MINNESOTA VIKINGS FOOTBALL CLUB, INC., d/b/a MINNESOTA VIKINGS; KMS PATRIOTS, L.P., d/b/a NEW ENGLAND PATRIOTS; THE NEW ORLEANS LOUISIANA SAINTS LIMITED PARTNERSHIP, d/b/a NEW ORLEANS SAINTS; NEW YORK FOOTBALL GIANTS, INC., d/b/a NEW YORK GIANTS; NEW YORK JETS FOOTBALL CLUB, INC., d/b/a NEW YORK JETS; THE PHILADELPHIA EAGLES FOOTBALL CLUB, INC., d/b/a PHILADELPHIA EAGLES; B & B HOLDINGS, INC., d/b/a PHOENIX CARDINALS; PITTSBURGH STEELERS SPORTS, INC., d/b/a PITTSBURGH STEELERS; THE CHARGERS FOOTBALL COMPANY, d/b/a SAN DIEGO CHARGERS; THE SAN FRANCISCO FORTY-NINERS, LTD., d/b/a SAN FRANCISCO FORTY-NINERS; THE SEATTLE PROFESSIONAL FOOTBALL CLUB,

d/b/a SEATTLE SEAHAWKS; TAMPA BAY AREA NFL FOOTBALL, INC., d/b/a TAMPA BAY BUCCANEERS; and NATIONAL FOOTBALL LEAGUE are permanently enjoined, and shall refrain, from agreeing among themselves, from conspiring, and/or from performing any act in furtherance of any agreement or conspiracy, to establish, whether overtly or otherwise, a uniform regular-season salary for any category of players whom Defendants may at any time employ.