**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 7, 2012

Lyle W. Cayce
Clerk

No. 11-30904

MICHAEL D. WILLIAMS,

Plaintiff-Appellant

v.

C&E BOAT RENTALS, L.L.C.,

Defendant-Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:09-CV-5464

Before DeMOSS, STEWART, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Michael D. Williams brought suit against Defendant-Appellant C&E Boat Rentals, L.L.C. ("C&E") under the Jones Act and General Maritime Law for injuries he allegedly suffered in August 2007 while working for C&E. A jury found in favor of C&E. Williams moved for a new trial asserting, *inter alia*, that counsel for C&E made inappropriate remarks during closing arguments. The district court denied the motion. Williams now appeals

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30904

the denial and also asserts that C&E's conduct throughout the trial irreparably prejudiced him and deprived him of a fair trial.  We AFFIRM.

## I.  BACKGROUND

In 2007, Williams was working as a deckhand aboard the vessel *M/V Russell A. Cheramie*, which C&E owned.  He was assigned to clean out the vessel's lube oil tanks.  Williams asserts that the fumes in the tank caused a host of physical and neurological injuries.

In September 2007, Williams hired Newton B. Schwartz, Sr. ("Schwartz") to represent him in a lawsuit against C&E.  Williams filed suit against C&E but voluntarily dismissed the case the next day.  At the same time, he fired Schwartz and briefly returned to work for C&E.

In 2009, after losing his job with C&E and holding several other jobs, Williams re-hired Schwartz and re-filed his suit alleging Jones Act claims for negligence and unseaworthiness.  New Orleans-based counsel Jack W. Harang represented Williams at trial, but Schwartz's involvement in the case was a topic about which C&E's counsel repeatedly questioned Williams and his witnesses on cross-examination.

A jury found in favor of C&E, and the trial court denied Williams's Fed. R. Civ. P. 59 motion for a new trial.  Williams now appeals.

## II.  DISCUSSION

### A.     Standard of Review

We review a district court's denial of a motion for a new trial for abuse of discretion.  *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 770 (5th Cir. 2009) (citation omitted).  The review, however, is "particularly limited," and "we must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]."  *Id.* (citation and internal quotation marks omitted).

2

No. 11-30904

## B.    Improper Comments by Defendant's Counsel

Williams objects to the following statements made during C&E's closing argument:[1]

1. "We believe the credible evidence before Newton Schwartz got involved in this case and started turning some witnesses around . . . ."

2. "When he got to Morgan City, he ran into an investigator for Mr. Schwartz who convinced him that he had a big lawsuit here and needed to file a suit. So Mr. Schwartz files a suit, sends a copy to Michael Williams. Michael Williams reads it and says, This is ridiculous the claims the man is making. And you got, his words, you got to be kidding what he had in that petition."

3. "Now, he then during this period of time in May gets back in touch with Mr. Schwartz kind of like Oz, the man behind the curtain pulling all the strings showing where things are going to go."

4. "And Mr. Schwartz, he has got, he is trying to manufacture a case here."

5. "[Schwartz] sends this man out to California from Oklahoma to California to see an internal medicine doctor with respect to his case. And he sends him out to California to go see a dentist. Now, we all know everyone needs a dentist out in California.

---

[1] Williams also asserts that he was denied a fair trial by the totality of C&E's conduct throughout the trial. Williams did not provide any references to the record or otherwise develop this argument in his briefs. An appellant waives an issue when he "does not provide contentions, facts, legal citations, arguments, or analysis . . . ." *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). "Failure adequately to brief an issue on appeal constitutes waiver of that argument." *Id.*; *see also* Fed. R. App. P. 28(a)(9)(A). Because Williams failed to adequately brief this issue on appeal, it is waived.

No. 11-30904

"So he goes out to California. And is he treated by Dr. Dahlgren? No, all he is is evaluated for this litigation. You heard the man complain: He didn't treat me. And he went to Dr. Grossman, and he was evaluated for this litigation. And was he treated by Dr. Grossman? No.

"And then Schwartz a couple months later, about a year later I think, sends him to a neuro-psychologist. Well, you think that it might be in Oklahoma where he is or maybe send him back out to California? But, no, he sends him to a doctor in Lafayette, Louisiana. Why? These are all people Schwartz uses. He wants a special man to be out there to get to try and prove a case. He wants a special man on toxic torts. He wants a special man on neuro-psychology. He wants a special man on dentistry to show that all these things work together, that they are a result of this supposed toxic event."

6. "And also remember what Dr. Swift said when he tried to examine this man, it was basically a normal examination, and the pulmonary function test . . . that Mr. Harang has been talking about, well, Dr. Swift tried to give it to Mr. Williams, and what did he say? He didn't participate. He wouldn't blow in the tube. He didn't give his effort. And I wonder why that is. Is it any different from what we saw?"

### 1.    Statements 1 and 6

Williams objected to Statements 1 and 6 at trial, so the proper standard of review is abuse of discretion. *See Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 731-32 (5th Cir. 2011).

No. 11-30904

"The trial judge is in a far better position than an appellate court to evaluate the prejudice flowing from counsel's improper comments during trial and to determine the most effective response to ensure a fair trial." *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 765 (5th Cir. 1989) (citations omitted). When an argument is challenged for impropriety, as is the case here, "we review the entire argument . . . within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court." *Learmonth*, 631 F.3d at 731 (citation and internal quotation marks omitted). "Alleged improprieties may well be cured by an admonition or charge to the jury." *Id.* (citation and internal quotation omitted).

Whether the closing argument statements at issue were based on evidence in the record is important to our inquiry. *See Alaniz*, 591 F.3d at 778. "It is a particularly indefensible tactic to use closing arguments to bring before the jury damaging facts not in evidence and never established." *Id.* (citation and internal quotation marks omitted).

Although we do not applaud C&E counsel's word choice in either statement, we hold that the trial court did not abuse its discretion in denying Williams's motion for a new trial on these grounds.

There is at least some evidence in the record that supports C&E counsel's characterization of Schwartz's actions. For example, one of Williams's witnesses testified that after meeting with Williams and someone who worked for Schwartz, the witness gave a deposition dramatically different from statements he had previously made.

Moreover, the trial court's instructions to the jury on several occasions clearly described how they were to view attorney statements. For example, immediately prior to closing arguments, the trial court stated:

> You can disregard what lawyers say particularly if a
> lawyer says something or interprets the evidence

5

differently from your interpretation of the evidence. . . . If [a lawyer] make[s] a misstatement [about the evidence or the law], then you have to go by your interpretation of the evidence and your decision or credibility of the witnesses and exhibits admitted into the record.

The jury charge includes similar language, as did the trial court's response in overruling Williams's objection.

We now turn to C&E counsel's characterization of Williams in Statement 6. At trial, Williams objected to C&E counsel's description of Williams's actions during the pulmonary function test, stating, "Your honor, that's absolutely contrary." The trial court responded, "Again, it is argument, counsel. Move on."

The record shows that Dr. Swift, one of C&E's witnesses, had examined Williams prior to trial. At trial, Swift deemed the pulmonary function test that Williams performed during the examination invalid because "[w]e couldn't get a reproducible test. That could be due to lack of understanding, lack of cooperation, could be a number of factors. We didn't get a good test."

C&E counsel's characterization that Williams would "not participate [or] blow in the tube [or] give his effort" is not fully supported by the record. However, in light of the trial court's instructions to the jury discussed above, all of the evidence presented at trial, and the deference we give to the trial court's actions at trial, we cannot say the trial court abused its discretion in denying Williams's motion for a new trial on the basis of these comments.

### 2. Statements 2 through 5

Williams did not contemporaneously object to Statements 2 through 5, so our review is for plain error. *See Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 276 (5th Cir. 1998).

"To demonstrate reversible plain error, the Appellant must show that (1) there is error; (2) it is plain; and (3) it affected his substantial rights." *United*

No. 11-30904

*States v. Morin*, 627 F.3d 985, 994 (5th Cir. 2010) (citation and internal quotation marks omitted). "As a general rule, [a plain] error affects a defendant's substantial rights only if the error was prejudicial. . . . An error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error." *Id.* (citation and internal quotation marks omitted).

As noted above, we do not applaud all of counsel's word choices. However, counsel's statements were sufficiently based on the record and more than tangentially related to Williams's claims. *See Alaniz*, 591 F.3d at 779. Specifically, Williams and his witnesses presented evidence that Williams and one of his witnesses had changed their accounts multiple times, that Williams had been upset with the first suit Schwartz filed, and that Schwartz had arranged for Williams to visit out-of-state doctors for evaluation.

Williams also argues C&E counsel's arguments about "special" men in Statement 5 was particularly prejudicial before a New Orleans jury because there is a local television personality known as the "Special Man," who helps people with low or no credit obtain loans. C&E disputes Williams's characterization of the televised "Special Man" as "disreputable[,] offensive[, and] sleazy."

Williams provides no evidence to support his assertion that the jury connected C&E counsel's statements with the television "Special Man." Nor does he provide any case law with analogous fact patterns. Because the trial transcript provides no information about C&E counsel's tone, inflection, or body language when he made the comments, this is a prime illustration of why a New Orleans-based "trial judge is in a far better position than an appellate court to evaluate the prejudice flowing from counsel's improper remarks . . . ." *Mills*, 886 F.2d at 765. "Special man" is a common-enough phrase that its mere use does not demonstrate C&E counsel attempted to improperly prejudice the jury.

7

No. 11-30904

In light of the evidence presented at trial and the trial court's instructions to the jury discussed above, we cannot say that "manifest injustice" has occurred. *See Alaniz*, 591 F.3d at 779.

## III. CONCLUSION

For the above reasons, we AFFIRM the district court's denial of Williams's motion for a new trial.